

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00144-CR
No. 02-19-00145-CR

———————————————

JWAN MCMAHON AKA JWAN MCMAHAN, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court Nos. 1543066D, 1543068D

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

In five points, Appellant Jwan McMahon appeals his convictions for felony assault of a family member—his ex-girlfriend and mother of two of his children—by impeding her breathing or circulation[1] and third-degree-felony unauthorized use of a motor vehicle.[2] *See* Tex. Penal Code Ann. §§ 22.01(b)(2), 31.07. We overrule all of his points and affirm the trial court's judgments.

## Background

### I. The offense and Appellant's open guilty plea

In April 2018, Appellant assaulted his ex-girlfriend, Alicen Mathis, by choking her, and then he took her car without her permission. When Appellant did not return the car, Mathis reported the incident to police, and Appellant was arrested and charged with felony family-violence assault and unauthorized use of a motor vehicle. *See id.* Because he had a prior assault-family-violence conviction and because of the choking allegation, the assault charge was enhanced to a first-degree felony with a possible punishment of life or 5 to 99 years in prison and a possible fine of no more than $10,000. *See id.* §§ 12.32, 12.42(b), 22.01(b-2). Due to other prior convictions, the motor-vehicle charge was enhanced to a third-degree felony with a possible

---

[1]Trial court cause no. 1543066D; appellate court cause no. 02-19-00144-CR.

[2]Trial court cause no. 1543068D; appellate court cause no. 02-19-00145-CR.

punishment of 2 to 10 years in prison and a possible fine of no more than $10,000. *See id.* §§ 12.34(a), 12.425(a).

In September 2018, the State offered a plea bargain of five years on the second-degree-felony assault charge. Appellant rejected the offer.

On November 12, 2018, Appellant appeared alongside his retained counsel in the trial court for a hearing regarding a plea offer by the State. The following exchange took place:

> THE COURT: The purpose of this hearing is for the State to put on the record if there is a final plea bargain offer. And if so, is there an expiration date on the offer. And, State, is there an offer?
>
> [STATE]: Yes, Your Honor. The offer is three TDC and that offer expires today.
>
> THE COURT: And, sir, have you had a chance to discuss that offer with your attorney?
>
> [APPELLANT]: Yes, ma'am.
>
> THE COURT: And is it for each case?
>
> [STATE]: It would just be on one. I dismissed the UUMV.
>
> THE COURT: All right. And have you had a chance to discuss that offer with your attorney?
>
> [APPELLANT]: Yes, ma'am.
>
> THE COURT: And you understand what it is?
>
> [APPELLANT]: Yes, ma'am.
>
> THE COURT: And you understand that it expires today?
>
> [APPELLANT]: Yes, ma'am.

3

THE COURT: And do you understand what the range of punishment is in the assault case that the State is going to proceed on?

[APPELLANT]: Yes, ma'am.

THE COURT: What is your understanding?

[APPELLANT]: The offer is three and I'm turning it down.

THE COURT: But do you know the possible punishment that you can get from a jury on that case?

[APPELLANT]: Two to 20.

THE COURT: Pardon?

[APPELLANT]: Two to 20.

THE COURT: Two to 20 years in the penitentiary and up to a $10,000 fine.

[APPELLANT]: Yes, ma'am.

THE COURT: And so you understand what the State is offering today is three years?

[APPELLANT]: Yes, ma'am.

THE COURT: So it's your choice if you would like to accept that offer or reject it and proceed to jury trial?

[APPELLANT]: I reject it.

Despite rejecting the three-year offer in November 2018, in April 2019, Appellant entered open pleas of guilty to the felony-assault charge and the motor-vehicle charge and pleaded true to the repeat-offender enhancements on both charges. In his plea-admonishment paperwork, he acknowledged that he was pleading guilty to a second-degree felony with a punishment range of 5 to 99 years.

4

## II. The punishment trial

### A. Appellant's abuse of Mathis

Appellant and Mathis, former high-school sweethearts, had a violent, on-and-off relationship for 12 to 15 years. Mathis testified that Appellant was unfaithful and had relationships with multiple women. At the time of trial, Mathis estimated Appellant had fathered at least a dozen children. Appellant and Mathis had two children together, one of whom was two years old at the time of the incident and a second who was born seven weeks before the trial. According to Mathis, Appellant had, on various occasions, given her a black eye, destroyed her cell phone and her television, and punched a hole in her apartment's living room wall—all because she questioned him about cheating on her with other women. Appellant would also "borrow" her only vehicle and not return it for extended periods of time, causing Mathis to miss or be tardy to work. According to Mathis, her attempts to distance herself were unsuccessful because he would inevitably show up at her apartment and would not stop knocking on her door until she let him inside.

Mathis described the pair as "estranged" at the time of the April 2018 incident. She stated that she had not seen him since the previous summer. Around nine or ten o'clock that Sunday night, Appellant contacted Mathis and asked to see his son; Mathis replied that the child was already asleep. But Appellant showed up at her apartment door anyway and began knocking. Not wanting him to wake up their son

and her other child, Mathis cracked open the door and told Appellant to leave, but Appellant pushed his way through the door and into the apartment.

Appellant guided Mathis to her bedroom. Thinking he wanted to have sex with her, she told him she was not interested and told him to leave, but he refused so she threatened to call the police and started toward her cell phone. Mathis testified that a "tussle" took place and he hit her in the face, that they started pushing each other and then he overpowered her. They ended up on the floor with Appellant on top of Mathis and straddling her with his knees on her shoulders so she could not push him off. Appellant then put both hands around Mathis's neck and started squeezing until Mathis realized she felt short of breath and her hearing became "muffled." Appellant was cursing at Mathis and calling her names, threatening to hurt her. Mathis told police later that she was afraid that Appellant "was actually going to break [her] neck or kill [her]." Finally, Appellant let go when Mathis threatened to burn him with a hot iron that was within her reach. At that point, he ran out the front door.

When Mathis went to lock her front door, she noticed her keys were missing. She went outside to look for her car and it was gone. Mathis testified that she expected Appellant to bring the car back, but when he did not bring it—or her keys— back in the next two days, she called the police and reported the incident. An emergency protective order was signed, prohibiting Appellant from contacting Mathis

and vice versa, but they maintained a relationship anyway. Their second child was conceived while this case was pending.

## B. Appellant's attempts to influence Mathis's testimony

Mathis and Tarrant County District Attorney's Office Investigator Steve Groppi both testified to Appellant's attempts to pressure Mathis into dropping the charges or not showing up for trial. Mathis testified that other people, including Appellant's mother and his friends, called her and tried to persuade her to drop the charges.

Investigator Groppi testified that he witnessed one of the phone calls first hand. While Investigator Groppi and two assistant district attorneys were meeting with Mathis at her apartment, she received a phone call that visibly upset her. Investigator Groppi testified that Mathis said that the name that showed up on the caller ID, "Man G," had called her several times before on Appellant's behalf. Mathis put the call on speakerphone so they could all listen to it, and Mathis identified the voice on the other end as Appellant's. Investigator Groppi described Appellant as sounding "upset" and testified that he "kept saying, why haven't you contacted my attorney, why haven't you signed the paperwork, why are you doing this to me." According to Investigator Groppi, Appellant told Mathis multiple times on the phone call that his best chance of beating the case was for Mathis to make sure she did not show up for the trial. Investigator Groppi also testified that when Appellant asked Mathis why she was not dropping the charges, she told him it was because they were

"not cool," and that Appellant got upset and continued to pressure her to not show up for trial. Investigator Groppi testified that Appellant told Mathis that they could work out their issues and that it would be her fault if he went to prison.

## C. Appellant's abuse of other women

Appellant stipulated to the admission of 13 exhibits reflecting his past criminal convictions, which included:

- Two December 2006 convictions for class-c misdemeanor assault by contact entered pursuant to Appellant's guilty pleas.

- An August 2009 adjudication of guilt for misdemeanor theft entered pursuant to Appellant's guilty plea.

- A September 2009 conviction for class-a misdemeanor assault bodily injury against a family member entered pursuant to Appellant's guilty plea.

- Two September 2012 convictions for class-c misdemeanor assault by contact entered pursuant to Appellant's guilty pleas.

- A July 2013 conviction for misdemeanor theft entered pursuant to Appellant's guilty plea.

- A March 2019 unadjudicated judgment on plea of guilty for check forgery.

- A March 2019 conviction for criminal mischief entered pursuant to Appellant's guilty plea.

- An April 2019 adjudication of guilt for assault of a family or household member with a prior conviction for the same.

Four officers testified to their investigations of Appellant's assaults on two other women. Officer Chris Gorrie testified to his response to a 9-1-1 report of an assault by Appellant against Chasity Williams, the mother of three of Appellant's

children.  According to Officer Gorrie, Williams reported that Appellant had forced his way into her apartment, and when the then-pregnant Williams attempted to retreat to her bedroom and call the police, he followed her, threw her belongings around the apartment, and then tackled her, forcing her body into a wall and causing pain to her and damage to the wall.  The collision with the wall left Williams with an abrasion on one elbow and pain from landing on her stomach.  When Williams was able to get up, Appellant tackled her again, pushing her into another wall, and then he threw her onto the bed and began to choke her.  Officer Gorrie testified that Williams recounted how Appellant said while choking her that he did love her "but he was going to kill her and shoot her."  Williams told Officer Gorrie that she was able to force a finger into his eye, break free, and run into the parking lot, where she called 9-1-1.  Officer Gorrie testified, "He followed her into the parking lot, punched her one more time in the face, which she said caused her pain, and then ran back into the apartment and continued to destroy her belongings."  According to Officer Gorrie, Williams obtained a protective order against Appellant.

Detective Casey Allen testified to his 2012 investigation of another assault of Williams by Appellant.  According to Detective Allen, Williams reported that Appellant jumped on her from behind and grabbed her by the neck in an attempt to choke her.  Williams was four months pregnant at the time.

Two officers testified to their investigations of allegations of Appellant's assault of his wife, Lavonya.  Officer J.B. Stringer testified that in April 2012 he responded to

9

a domestic-violence call by Lavonya and that she alleged that she and Appellant were arguing over the keys to a car when Appellant struck her in the head and face and put his arms around her neck, although he did not choke her. Detective Jwanowski also testified to his 2013 investigation into a domestic disturbance involving Appellant, Lavonya, and another man. Lavonya reported that Appellant became upset and started an argument because he lost a SIM card and blamed Lavonya and the other man for taking it. According to Lavonya, Appellant started "punching holes in the walls of the garage and then started pushing her around in the furniture and walls," causing her pain and damaging the walls.

### D. Appellant's case and the jury's sentence

After the State rested its punishment case, Appellant's trial counsel called only one witness, Appellant's mother. The jury assessed a 24-year sentence on the assault charge and 7 years on the motor-vehicle charge. The trial court sentenced Appellant accordingly.

## Discussion

Appellant's five points can be divided into two categories: a complaint that his right to due process was violated and four complaints that his trial attorney rendered ineffective assistance. We will address each argument in turn.

## I. Due process claim

In his first issue, Appellant argues that his right to due process was violated when, during the November 2018 hearing, the trial court told him the wrong punishment range.

Appellant first relies on Article 26.13(a)(1) of the Code of Criminal Procedure which requires the trial court, prior to accepting a plea of guilty, to admonish the defendant of the range of punishment attached to the offense. Tex. Code Crim. Proc. Ann. art. 26.13(a)(1). While he acknowledges that Texas courts have agreed that this article does not apply when a defendant enters a "not guilty" plea, *see Hawkins v. State*, 660 S.W.2d 65, 78 (Tex. Crim. App. 1983), Appellant argues that the trial court, by voluntarily admonishing Appellant "before he rejected the State's offer," subjected itself to caselaw requiring it to give the *correct* admonishments, *see Ex parte Williams*, 704 S.W.2d 773, 776–77 (Tex. Crim. App. 1986). Alternatively, Appellant argues that general concerns of due process required that the trial court not give false information "which induces a rejection of a plea offer."

Appellant's arguments are based on the premise that the trial court's false information induced his rejection of the plea offer. But the facts do not support such a premise. Based on the record, Appellant had already rejected the plea-bargain offer before the trial court advised him of the wrong punishment range:

> THE COURT: And do you understand what the range of punishment is in the assault case that the State is going to proceed on?

[APPELLANT]:  Yes, ma'am.

THE COURT:  What is your understanding?

[APPELLANT]:  The offer is three and I'm turning it down.

THE COURT:  But do you know the possible punishment that you can get from a jury on that case?

[APPELLANT]:  Two to 20.

THE COURT:  Pardon?

[APPELLANT]:  Two to 20.

THE COURT:  Two to 20 years in the penitentiary and up to a $10,000 fine.

The trial court's information was wrong because Appellant was charged with a second-degree felony and therefore facing a punishment range of 5 to 99 years.  *See* Tex. Penal Code Ann. §§ 12.42(b), 22.01(b-2).  And from our review of the record, it appears that the State was the source of this misinformation.  On the day of this hearing, the State filed a "Plea Offer Acknowledgment" incorrectly informing the trial court that Appellant was charged with a third-degree felony of family-violence assault with intent to impede breath, with a 2-to-20-year range of punishment and fine of $10,000 or less.

But regardless of the source of the misinformation, the fact still remains that Appellant had already rejected the State's offer of three years on a lesser charge by the

12

time he received this misinformation from the trial court. Because Appellant's arguments are not supported by the facts of this case, we overrule his first issue.[3]

## II. Ineffective assistance claim

In his second through fifth points, Appellant argues that he received ineffective assistance of counsel because (1) his trial counsel failed to advise him that he faced an enhanced punishment range of 5 to 99 years' incarceration if he declined the State's three-year plea offer, (2) his trial counsel failed to lodge hearsay and confrontation-clause objections to certain testimony, (3) his trial counsel failed to present any mitigation evidence, and (4) his trial counsel's performance as a whole fell below objective standards of reasonableness.

### A. Standard of review

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The record must

---

[3]By so holding, we do not make any ruling on the merits of the argument that a defendant's due-process rights may be violated by the trial court's dispensing of misinformation. Our holding today is limited to the unique facts of this case.

affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

14

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. We must ultimately focus on examining the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*, 104 S. Ct. at 2069.

## B. Failure to correct trial court's misinformation

Appellant asserts in his second issue that his trial counsel rendered ineffective assistance when he advised Appellant of the wrong punishment range, leading him to reject the State's three-year offer. But even assuming that his trial counsel did incorrectly advise him, Appellant has not met his burden to show that he was prejudiced by any such bad advice.

To establish prejudice in a claim of ineffective assistance in which a defendant rejects a plea bargain because of bad advice, the appellant "must show a reasonable probability that: (1) he would have accepted the earlier offer if counsel had not given

15

ineffective assistance; (2) the prosecution would not have withdrawn the offer; and (3) the trial court would not have refused to accept the plea bargain." *Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013). Reviewing the record before us, Appellant has not made such a showing. He did not file a motion for new trial or otherwise attempt to include evidence in the record that he would have accepted the State's offer or that the trial court would not have refused to accept the plea bargain. We therefore cannot sustain his claim of ineffective assistance on this ground and overrule his second issue.

### C. Failure to object to hearsay and on confrontation-clause grounds

Appellant argues in his third issue that his trial counsel rendered ineffective assistance by failing to object on hearsay and confrontation-clause grounds to the testimony by Officer Gorrie, Detective Allen, Officer Stringer, and Detective Jwanowski to hearsay statements by Williams and Lavonya regarding alleged instances of domestic abuse by Appellant in the past.

Trial counsel's failure to object to this testimony, especially on confrontation-clause grounds, is concerning, but in considering Appellant's argument we are again hindered by the lack of evidence in the record. We are not permitted to infer ineffective assistance based on an unclear record or a record that does not show why trial counsel failed to do something. *Menefield*, 363 S.W.3d at 593. In this case, trial counsel was not afforded an opportunity to explain his actions or strategy. *See id.* And we do not view his failure to object to this testimony as so outrageous that it is

outside the possible behavior of a competent attorney. *See Nava*, 415 S.W.3d at 308. Evidence was presented of Appellant's attempts to persuade Mathis not to testify, and evidence was presented that the State's attempt to serve a subpoena on Williams and compel her to testify was unsuccessful. This may have factored into trial counsel's decision. But this is only one possible reason; we do not have any evidence in the record to explain trial counsel's failure to object. Without any such explanation, because this does not rise to the level of outrageous conduct, we decline to hold that Appellant's trial counsel was ineffective on this ground and overrule his third issue.

### D. Failure to present mitigating evidence

In his fourth issue, Appellant argues that his trial counsel was ineffective because he did not present any mitigating evidence in punishment. But again Appellant has failed to meet his burden to show ineffective assistance. A claim of ineffective assistance of counsel based on counsel's failure to call witnesses fails in the absence of a showing that such witnesses were available to testify and that the defendant would have benefitted from their testimony. *Brennan v. State*, 334 S.W.3d 64, 79 (Tex. App.—Dallas 2009, no pet.) (citing *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (orig. proceeding)). Other than broadly arguing that his trial counsel "could have elicited testimony about [Appellant]'s childhood, his education, his responsibilities as a father, and his work history" from Appellant's mother, Appellant provides no details of what that testimony would be, or what any other possible mitigation evidence could have been offered. By failing to do so, he has

failed to meet his burden to show ineffective assistance on this ground, and we therefore overrule his fourth issue. *See id.*

### E. Cumulatively ineffective assistance

In his fifth and final issue, Appellant argues that his trial counsel's performance as a whole amounts to ineffective assistance. *See Ex parte Welborn*, 785 S.W.2d 391, 396 (Tex. Crim. App. 1990). Appellant asks us to consider his arguments of ineffectiveness presented in his second, third, and fourth issues, as well as trial counsel's failure to give an opening statement, his failure to object to Mathis's testimony that an associate of Appellant called her and attempted to "relay a message" to her to drop the charges, his failure to object to testimony by Officer Gorrie that the department received reports of gunshots in the vicinity of Williams's apartment after Appellant's assault of her, and his failure to object to improper jury argument by the State.

We have already rejected Appellant's first three arguments of ineffective assistance, so we will now address his remaining four. First, the decision to deliver or not deliver an opening argument is "entirely optional" and "inherently tactical." *See Darkins v. State*, 430 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *Taylor v. State*, 947 S.W.2d 698, 704 (Tex. App.—Fort Worth 1997, pet. ref'd). We decline to find the lack of an opening statement to be ineffective assistance in this case.

18

Appellant's third argument argues that Mathis's testimony regarding Appellant's friends' or relatives' attempts to "relay[] a message" to her to drop the charges was likely hearsay to which no exception applied.[4]  But even if trial counsel could have objected, we will not find that he rendered ineffective assistance by failing to make this evidentiary objection where it does not rise to the level of outrageous behavior that deprived Appellant of a fair trial, *see Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, especially without giving trial counsel an opportunity to explain his reasoning or trial strategy, *see Menefield*, 363 S.W.3d at 593.

On Appellant's third argument regarding Officer Gorrie's testimony to reports of gunshots in the vicinity of Williams's apartment on the same day of Appellant's assault of Williams, the State concedes on appeal that it "painted an incomplete picture, inviting the jury to incorrectly fill in the gaps in the evidence and conclude that Appellant fired the gunshots in question."  But the State also points out that Appellant's trial counsel aptly exposed those gaps by establishing that there was no evidence linking Appellant to the gunshots or that the sound of gunshots came from Williams's apartment in particular.  Without further information explaining otherwise,

---

[4]The State argues that the testimony was not inadmissible hearsay because a statement offered against an opposing party made by a person whom the party has authorized to make the statement is not hearsay.  *See* Tex. R. Evid. 801(e)(2)(C).  But the State points to no evidence in the record that Appellant authorized the friends or relatives to make these communications on his behalf.

we are inclined to conclude that Appellant's trial counsel did not object for reasons of trial strategy. *See Menefield*, 363 S.W.3d at 593.

And finally, Appellant in his fourth argument argues that trial counsel should have objected to the following argument by the state during its closing:

> You send a verdict not only to her, but to this community with what this sentence is you decide to give him. . . . But what my prayer is is that nobody says, nobody in the community who sees this article, that this person who's charged with trying to kill somebody, second-degree felony, strangulation with previous conviction, stealing her car and leaving her in the house to fend for herself, that they don't say, just ten years? That's it? Just 15 years? That's it? But that they say, justice. That's it.

But contrary to Appellant's argument on appeal, this is not an improper plea to the jury "designed to induce the jury to convict the defendant or assess a particular punishment because 'the people' desire such." *See Cortez v. State*, 683 S.W.2d 419, 420 (Tex. Crim. App. 1984). Rather, it is a proper plea for law enforcement urging the jury to be the voice of the community and "send a message." *See Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pets. ref'd) (citing *Cortez*, 683 S.W.2d at 421; *Goocher v. State*, 633 S.W.2d 860, 864 (Tex. Crim. App. [Panel Op.] 1982) (holding proper the argument, "I am asking you to enforce it. I'm asking you to do what needs to be done to send these type of people a message to tell them we're not tolerating this type of behavior in our county.")). We therefore cannot hold Appellant's trial counsel ineffective in this respect.

Considering the record before us—and the absence of any opportunity for trial counsel to explain his strategy and decisions—we cannot say that trial counsel's representation fell below the level of reasonable assistance demanded in criminal cases. We therefore overrule Appellant's fifth and final issue.

## Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgments.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  February 6, 2020